IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

WILLIAM C. GOLDEN *and*
LA QUETTA M. GOLDEN                                                    PLAINTIFFS


v.                                              CIVIL ACTION NO. 1:21-cv-129-TBM-RHWR


DENNIS RICHARD MCDONOUGH,
*Secretary, The Department of Veterans*
*Affairs*                                                                DEFENDANT

## ORDER DENYING MOTION TO DISMISS AND MOTION TO SEAL

William Golden, proceeding *pro se*, brings this Title VII case against the Department of Veterans Affairs ("VA") alleging race and sex discrimination for failing to promote him and for creating a hostile work environment. His wife, La Quetta Golden, also brings a *pro se* claim alleging that the VA violated an "equitable duty" owed to her when it failed to promote her husband. The VA moved to dismiss William Golden's hostile work environment claim and La Quetta Golden's "equitable duty" claim. While the VA highlights certain weaknesses in Mr. Golden's hostile work environment claim, the VA has not demonstrated that Mr. Golden cannot meet the low bar of plausibility. Further, the Court is concerned that La Quetta Golden has not demonstrated this Court has jurisdiction to hear her claim. The Court denies without prejudice the VA's request to dismiss Mrs. Golden's "equitable duty" claim to allow the parties an opportunity to brief the jurisdictional issue.

Additionally, Mrs. Golden filed a Motion [9] requesting the Court to seal an Order to Show Cause [2] entered previously. Because Mrs. Golden has not presented interests in sealing the Court's Order [2] that outweigh the public's right of access, her Motion [9] is denied.

# I. FACTUAL BACKGROUND

The Plaintiffs alleged the following facts in their Amended Complaint [4]. William Golden is a black male nurse in the Mental Health Intensive Case Management Department at the Biloxi Veterans Affairs Hospital. [4], pg. 3. Mr. Golden has been employed at the VA's Biloxi Hospital for thirty years, and—according to him—has never received a disciplinary action during that time. *Id.* Mr. Golden submits that while he has not received a promotion for over twenty years, several less qualified white nurses have been promoted instead. *Id.* at 3-4.

Mr. Golden also claims that one of his supervisors, Louise Esteve, discriminated against him based on his race during a series of workplace incidents beginning in the fall of 2015. Mr. Golden asserts that Supervisor Estive received a false report from one of Mr. Golden's coworkers that one of Mr. Golden's patients was abused by their caregiver, and Mr. Golden did not report the abuse. *Id.* at 5. Supervisor Esteve told Mr. Golden to respond to this report. *Id.* On a separate occasion, Supervisor Esteve asked Mr. Golden about this report again and "questioned [Mr. Golden's] ethics and character" by asking him whether the caregiver mentioned in the report went to Mr. Golden's church and paid tithes there. *Id.*

Then, between December 2015 and January 2016, Supervisor Esteve requested three times that Mr. Golden screen and accept a patient with a history of violence—despite allegedly knowing that two of Mr. Golden's white coworkers refused to accept this patient "out of concern for their safety." *Id.* Mr. Golden, also concerned about his safety, likewise refused to accept the violent patient. In response, Supervisor Esteve held a meeting with Mr. Golden and gave him a "Letter of Expectation." *Id.* at 6. She explained that the "Letter of Expectation" was not a disciplinary action, but rather "simply establish[ed] policy." *Id.* However, Supervisor Esteve allegedly did not provide

a letter of expectation to any white or female employees. *Id.* Also, the "Letter of Expectation" allegedly assigned only Mr. Golden the "arduous and harassing task" of conducting a brief inspection of a patient's residence when he visits them. [16], pg. 21. Finally, on a separate occasion, Supervisor Esteve twice asked Mr. Golden if he had seen his patients that day. [4], pg. 6.

Based on the above behavior by Supervisor Esteve and the VA, Mr. Golden filed a charge with the Equal Employment Opportunity Commission ("EEOC"). *Id.* at 8. Mr. Golden alleges that during the EEOC's investigation, Supervisor Esteve drafted and submitted three "fraudulent documents"—including a "modified" "Letter of Expectation"—to the EEOC record. *Id.* at 6. The VA denies that these documents were fraudulent. [17], pg. 5-6.

La Quetta Golden does not claim to have been employed by the VA. Instead, she explains that as Mr. Golden's wife, she has a fifty percent vested interest in Mr. Golden's federal pension fund, thrift savings account, and Social Security account. [4], pg. 6. By failing to promote Mr. Golden over the past twenty years, Mrs. Golden contends that the VA injured her interest in Mr. Golden's retirement accounts and violated an "equitable duty" owed to her. *Id.* Mrs. Golden later clarified that this "equitable duty" arises out of an "equitable and implied contract" that she alleges exists between her and the VA. [16], pg. 9.

## II. PROCEDURAL HISTORY

On April 11, 2016, Mr. Golden filed a complaint with the EEOC. [4-2], pg. 1. The EEOC ultimately found in favor of the VA, determining that no discrimination had been established. *Id.*

After exhausting his claims with the EEOC, Mr. Golden filed suit in the Southern District of Mississippi. In the original Complaint, Mr. Golden described Mrs. Golden as his "Attorney-in-Fact." [1], pg. 1. District Judge Ozerden—who was originally assigned the case—issued an Order

to Show Cause [2] explaining that Mrs. Golden is no longer licensed to practice law in the State of Mississippi and could not represent Mr. Golden. The Order directed Mr. Golden "show cause why his claims should not be dismissed without prejudice or, alternatively, why he should not be required to file an Amended Complaint either pro se or through a licensed attorney who is admitted to practice law in this judicial district." [2], pg. 1.

In response to the Order to Show Cause, the Plaintiffs filed an Amended Complaint [4], this time adding Mrs. Golden's *pro se* "equitable duty" claim. Mrs. Golden is apparently still representing Mr. Golden's claims though, as only she signed the Plaintiff's joint Response [15] and supporting Memorandum [16] to the VA's Motion to Dismiss [12]. After Mrs. Golden was added as a party, Judge Ozerden recused himself. [7]. Mrs. Golden, with permission from the late Magistrate Judge John Gargiulo, filed a sealed Motion [9] to Seal the Order to Show Cause [2]. The VA then filed a Motion to Dismiss [12] under Federal Rule of Civil Procedure 12(b)(6), requesting the Court dismiss Mr. Golden's hostile work environment claim and Mrs. Golden's "equitable duty" claim.

## III. DISCUSSION

"The pleading standards for a Rule 12(b)(6) motion to dismiss are derived from Rule 8 of the Federal Rules of Civil Procedure, which provides, in relevant part, that a pleading stating a claim for relief must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

4

The Fifth Circuit has explained the *Iqbal/Twombly* standard as follows:

> In order for a claim to be plausible at the pleading stage, the complaint need not strike the reviewing court as probably meritorious, but it must raise "more than a sheer possibility" that the defendant has violated the law as alleged. The factual allegations must be "enough to raise a right to relief above the speculative level."

*Oceanic Expl. v. Phillips Petroleum Co. ZOC*, 352 F. App'x 945, 950 (5th Cir. 2009) (citing *Twombly*, 550 U.S. at 570).

The Court need not "accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994)). However, "[p]leadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain." *Hughes v. Tobacco Inst. Inc.*, 278 F.3d 417, 420 (5th Cir. 2001) (citing *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 (5th Cir. 1988)). "The issue is not whether the plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). "[A] motion to dismiss under 12(b)(6) is viewed with disfavor and is rarely granted." *IberiaBank Corp. v. Illinois Union Ins. Co.*, 953 F.3d 339, 345 (5th Cir. 2020) (quoting *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013)).

**1. Plaintiff William Golden's Hostile Work Environment Claim**

"A hostile work environment exists 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S.

101, 116, 122 S. Ct. 2061, 2074, 153 L. Ed. 2d 106 (2002)). To demonstrate a hostile work environment, a plaintiff must show:

> (1) the victim belongs to a protected group; (2) the victim was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) the victim's employer knew or should have known of the harassment and failed to take prompt remedial action.

*E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007).

The Fifth Circuit is clear that a plaintiff "need not make out a prima facie case of discrimination in order to survive a rule 12(b)(6) motion to dismiss for failure to state a claim." *Whitlock v. Lazer Spot, Inc.*, 657 F. App'x 284, 286 (5th Cir. 2016) (citing *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)). Regardless, a plaintiff must still allege facts "sufficient to establish the elements of [his] claims." *Meadows v. City of Crowley*, 731 F. App'x 317, 318 (5th Cir. 2018) (citing *Chhim v. University of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) ("Although [the plaintiff] did not have to submit evidence to establish a prima facie case of discrimination at [the motion to dismiss] stage, he had to plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible.")). "[A] court errs by requiring a plaintiff to plead something more than the 'ultimate elements' of a [Title VII] claim." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019). Instead, a plaintiff "must set forth sufficient allegations from which the court can reasonably infer, assuming the allegations to be true, that Defendant could be liable for the misconduct alleged." *Jackai v. Affirmative Servs., Inc.*, No. 3:13-cv-3594-L, 2015 WL 264713, at *4 n.4 (N.D. Tex. Jan. 21, 2015). "A hostile work environment claim . . . necessarily rests on an allegation that an employer has created 'a working environment heavily charged with . . . discrimination.'" *Raj*, 714 F.3d at 330-31 (quoting *Rogers v. EEOC*, 454

F.2d 234, 238 (5th Cir. 1971)). The harassment must "affect[] a condition or privilege of her employment." *Stone v. La. Dep't of Revenue*, 590 F. App'x 332, 340 (5th Cir. 2014).

"To affect a term, condition, or privilege of employment, . . . 'harassment must be sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment.'" *Stewart*, 586 F.3d at 330 (quoting *Nat'l R.R. Passenger Corp.*, 536 U.S. at 116). "The environment must be deemed 'both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" *Lauderdale v. Tex. Dep't of Crim. Just., Institutional Div.*, 512 F.3d 157, 163 (5th Cir. 2007) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)). "To determine whether the victim's work environment was objectively offensive, courts consider the totality of the circumstances, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance." *WC&M Enters., Inc.*, 496 F.3d at 399 (citing *Harris v. Forklift Sys.*, 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)). "[C]ommon workplace occurrences within an employer's discretion, such as supervising and reprimanding employees, scrutinizing employee work, requiring pre-approval for compensatory time, and requiring employees to conduct themselves in a professional manner, do not rise to the level of severe and pervasive conduct necessary to show a hostile work environment." *Felder v. Blank*, No. 3:11-cv-737-BN, 2013 WL 6578995, at *9 (N.D. Tex. Dec. 16, 2013) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 557-58 (5th Cir. 2007)).

The VA asserts that "even if we were to take all of the allegations made by Plaintiffs regarding a hostile work environment as true, . . . they cannot provide information that would

suggest that any harassment was based upon Mr. Golden's race or sex, or show that the harassment was 'severe' or 'pervasive.'" [13], pg. 12. As will be discussed, the VA raises important weaknesses in Mr. Golden's claim. But the VA has not convinced the Court that this claim should be dismissed at this early stage in the litigation. "A motion to dismiss may be granted only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Moore v. Allstate Tex. Lloyd's*, 742 F. App'x 815, 817 (5th Cir. 2018) (quoting *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 529 (5th Cir. 1996)). To survive a motion to dismiss, Mr. Golden is not required to show that he will "ultimately prevail," rather only that the claim is plausible. *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007); *see also New Orleans City v. Ambac Assur. Corp.*, 815 F.3d 196, 200 (5th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)) ("In order to survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'").

And in the Title VII context, the Fifth Circuit has stressed that "a plaintiff need not make out a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Raj*, 714 F.3d at 331 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–12, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)). Also, "[i]n determining whether an environment is hostile or abusive, the court must look to the totality of the circumstances." *Lauderdale*, 512 F.3d at 163. The Court therefore "should not disaggregate and separately analyze incidents that are alleged to constitute a hostile work environment." *Gibson v. Verizon Servs. Org., Inc.*, 498 F. App'x 391, 394 (5th Cir. 2012). *See also Garvin v. Sw. Corr., L.L.C.*, 391 F. Supp. 3d 640, 650 (N.D. Tex. 2019) (quoting *Donaldson v. CDB Inc.*, 335 F. App'x 494, 501 (5th Cir. 2009)) ("[A] hostile-work-

8

environment claim requires a court view the 'totality of the circumstances,' and not consider the alleged conduct piecemeal."). While the VA identifies certain flaws in Mr. Golden's allegations, "[u]nder the 'totality of the circumstances' test, 'the issue is not whether each incident of harassment standing alone is sufficient to sustain the cause of action in a hostile environment, but whether—taken together—the reported incidents make out such a case.'" *Bryant v. FMC Techs.*, No. CIV.A. H-08-3744, 2010 WL 3701576, at *11 (S.D. Tex. Sept. 16, 2010) (quoting *Jackson v. Quanex Corp.*, 191 F.3d 647, 659 (6th Cir. 1999)).

Also, the VA asks this Court to take into consideration several documents from the EEOC record along with its motion to dismiss: the formal amended EEOC complaint, the agency's Report of Investigation Summary, and the affidavits of Mr. Golden, Supervisor Esteve, Tonya Fountain-Adams, and Perry Jenkins. The VA provided caselaw from this circuit where a district court has considered an EEOC charge in a Rule 12(b)(6) motion, *Hossain v. McHugh*, No. EP-15-cv-83-KC, 2015 WL 7162022, at *2, n.3 (W.D. Tex. 2011), and caselaw outside of this circuit where a district court considered a letter summarizing the EEOC's investigation. *Rogan v. Giant Eagle, Inc.*, 113 F. Supp. 2d 777, 782 (W.D. Pa. 2000). The VA does not provide any caselaw, though, where a court considered affidavits in a motion to dismiss, despite relying extensively on Supervisor Esteve's affidavit in its Reply brief [17]. This further emphasizes that the arguments the VA makes are more appropriate for a summary judgment motion—not a Rule 12(b)(6) motion.

Mr. Golden cites the following actions by Supervisor Esteve as creating a hostile work environment:

1. Requesting Mr. Golden to respond to a report from a co-worker allegedly falsely accusing him of failing to report abuse of one of his patients by the patient's caregiver. [4], pg. 5.

2. Questioning whether the patient's allegedly abusive caregiver was a member of Mr. Golden's church and whether the caregiver gave tithes to Mr. Golden's church. *Id.*

3. Questioning whether Mr. Golden had seen his patients. *Id.* at 6.

4. Requesting Mr. Golden on three occasions to screen and accept a patient with a history of violence—allegedly while knowing that two white co-workers had refused to accept the patient. *Id.* at 5.

5. Denying Mr. Golden a promotion. *Id.* at 6.

6. Issuing Mr. Golden a "Letter of Expectation" that allegedly was not given to any white or female employees. *Id.*

7. Allegedly submitting three false documents to the EEOC administrative record. *Id.*

The VA essentially raises three arguments in favor of dismissal. The VA contends that the incidents Mr. Golden raises are not related to his protected classes. Next, the VA asserts that these incidents are common workplace occurrences, rather than examples of severe or pervasive harassment. Finally, the VA argues that Mr. Golden's claim should be dismissed because he never communicated his complaints to his managers. The Court finds that none of the VA's arguments warrant dismissal—at least at this early stage of the litigation.

**i. Protected Class**

The VA asserts that Mr. Golden has failed to "provide any information that would suggest that any harassment was based upon Mr. Golden's race or sex." [13], pg. 12. Indeed, in the Amended Complaint, Mr. Golden did not directly link his complaints about Supervisor Esteve asking him to respond to allegations that he failed to report his patient's abuse, questioning him about the alleged abuser, and asking if he had seen his clients, to his protected class. Were these

particular grounds the entirety of Mr. Golden's hostile work environment claim, his claim may not

survive. *See Whitlock v. Lazer Spot, Inc.*, 657 F. App'x 284, 287 (5th Cir. 2016) (affirming dismissal

under Rule 12(b)(6) of a hostile work environment claim where the plaintiff "wholly fail[ed] to

allege facts that demonstrate that he was repeatedly subjected to harassment that was linked to his

race"). *See also Ellis v. Principi*, 246 F. App'x 867, 871 (5th Cir. 2007) (affirming summary

judgment against Title VII plaintiff who failed to implicitly or explicitly connect delays in

forwarding pay stubs and forms to a protected class); *Vallecillo v. U.S. Dep't of Hous. & Urb. Dev.*,

155 F. App'x 764, 765-67 (5th Cir. 2005) (affirming summary judgment against Title VII plaintiff

who alleged that he was admonished for incidents of unprofessional conduct and transferred to a

new location when he failed to show that the complained-of conduct was based on his race); *Moore

v. United Parcel Serv., Inc.*, 150 F. App'x 315, 319 (5th Cir. 2005) (affirming summary judgment

against Title VII plaintiff who failed to show that discipline he received was racially motivated).

But Mr. Golden does directly link his other allegations to his race and sex. Thus, the

pertinent question for the Court is whether the incidents Mr. Golden alleges are sufficiently severe

or pervasive. *See EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 398-99 (5th Cir. 2007) (explaining

that when the plaintiff alleged a pattern of derogatory comments and slurs based on his protected

class, a factfinder could easily infer that other harassing incidents were linked to the plaintiff's

protected class).

**ii. Severe or Pervasive**

The VA argues that the actions that Mr. Golden complains of are nothing more than

common workplace occurrences. Some of the gripes may fit this description. Mr. Golden alleges

that Supervisor Esteve investigated a claim that Mr. Golden had not properly monitored his

patients, asked him to respond to that allegation, and questioned whether he has seen his patients. Yet "careful monitoring of job performance . . . absent any other evidence of prohibited discrimination, does not suffice to support a claim for hostile work environment." *Ellis v. Principi*, 246 F. App'x 867, 871 (5th Cir. 2007). Likewise, Mr. Golden's claim that Supervisor Esteve requested on three occasions that Mr. Golden screen and accept an allegedly violent patient while allegedly knowing that two white nurses had refused to accept the same patient does not—on its own—establish a hostile work environment. By his own admission in the Amended Complaint, Mr. Golden successfully refused the task—just as he alleges his white co-workers did. [4], pg. 5. Mr. Golden does not explain how Supervisor Esteve's requests for him to screen this patient affected a term, condition, or privilege of employment.

Additionally, denying Mr. Golden a promotion alone does not establish a hostile work environment. The VA's failure to promote Mr. Golden is the crux of his other Title VII claim, which the VA has not asked this court to dismiss. Mr. Golden's failure to promote claim can be analyzed as a discrete act. "Discrete acts constituting discrimination or retaliation claims . . . are different in kind from a hostile work environment claim that must be based on severe and pervasive discriminatory intimidation or insult." *Robinson v. Paulson*, No. CIV.A. H-06-4083, 2008 WL 4692392, at *20 (S.D. Tex. Oct. 22, 2008) (quoting *Lester v. Natsios*, 290 F. Supp. 2d 11, 33 (D.D.C. 2003)). Thus, "discrete acts that are ultimate employment decisions are more appropriately considered in traditional or disparate treatment discrimination claims." *Buchanan v. Exxon Mobil Corp.*, No. CIV.A. H-04-2889, 2006 WL 492605, at *9 (S.D. Tex. Mar. 1, 2006) (holding that a demotion is insufficient to support a hostile work environment claim). As the Eastern District of Louisiana explained:

12

> A hostile work environment "involves repeated conduct . . . [that] occurs over a series of days or perhaps years and . . . [where] a single act of harassment may not be actionable on its own," *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115, 122 S. Ct. 2061, 153 L. Ed. 2d 106 . . . (2002), [while] a discrete-acts claim involves a single act of discrimination "such as termination, failure to promote, denial of transfer, or refusal to hire." *Id.* at 114, 122 S. Ct. 2061 . . . "[A] plaintiff may not combine discrete acts to form a hostile work environment claim without meeting the required hostile work environment standard," *Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011).

*Rowe v. Jewell*, 88 F. Supp. 3d 647, 674 (E.D. La. 2015) (quoting *Brooks v. Grundmann*, 748 F.3d 1273, 1278 (D.C. Cir. 2014)).

Other allegations raised by Mr. Golden, though, are more substantive. Mr. Golden argues that the "Letter of Expectation" that Supervisor Esteve issued him demonstrates a hostile work environment. Mr. Golden alleges that this letter was not given to any white or female employees, and assigned only him an "arduous and harassing task"—conducting a brief inspection of a patient's residence when he visits them. [16], pg. 21. Mr. Golden also notes Supervisor Esteve did not explain in the letter why it had been given to him. The VA, in turn, argues that it "is untrue" that no other employees have received letters of expectation under similar circumstances, relying on the affidavit testimony of Supervisor Esteve. [17], pg. 4. The VA also claims—again, based on Supervisor Esteve's testimony—that the letter was issued to Mr. Golden "in response to three incidents in a six-month time span in which Ms. Esteve felt that Mr. Golden had put veterans or others in unsafe positions." *Id.* at 5. These are arguments more fitting for summary judgment or at trial. When deciding a Rule 12(b)(6) motion, "[t]he "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted).

It is true that some cases indicate that similar allegations may "not rise to the level of the frequent, severe, or unreasonable harassment necessary to create a hostile work environment." *Reed v. Riverboat Corp. of Miss.*, No. 1:18-cv-405-HSO, 2020 WL 4023945, at *5 (S.D. Miss. July 16, 2020) (granting *summary judgment* when a plaintiff alleged that he was subjected to more scrutiny, discipline, and harsher working conditions than his white coworkers and was issued three "questionable" disciplinary notices).[1] But, on the other hand, accepting Mr. Golden's allegations as true and viewing them in the light most favorable to him at the *motion to dismiss* stage, "the Court cannot say definitively that [Mr. Golden] will be unable to sustain a cause of action on [his] hostile work environment claim." *Parker v. State of La. Dep't of Educ. Special Sch. Dist.*, No. CIV.A. 07-369-RET, 2008 WL 348786, at *4 (M.D. La. Feb. 7, 2008). There, the district court denied a motion to dismiss when it found that "the Court is entitled to additional information regarding the type, amount, and difficulty" of tasks the plaintiff alleged she had to complete that her white co-workers did not, and whether other employees had been punished similarly for analogous infractions. *Id.* "In other words," the court explained, the plaintiff "has alleged enough to get past the hurdle of a Rule 12(b)(6) motion, and if her claim is indeed unmeritorious, as the [defendant] contends, such an argument would be more appropriately raised after some discovery is completed and through the use of a summary judgment motion." *Id.* At this stage of the case, the Court cannot

---

[1] *See also Kang v. Bd. of Supervisors*, 75 F. App'x 974, 975-76 (5th Cir. 2003) (affirming *summary judgment*, finding that a poor performance evaluation, an unauthorized write up, and "unfairly and unjustly" criticizing the plaintiff did not constitute a hostile work environment); *Herm v. Union Carbide Corp.*, No. C.A. 4:08-cv-2272, 2009 WL 7326067, at *4 (S.D. Tex. Sep. 1, 2009) (granting *summary judgment* and finding that issuing a disciplinary letter to the plaintiff, requiring the plaintiff to complete a performance improvement plan, and giving the plaintiff a negative evaluation did not approach severe and pervasive harassment); *Porto v. Chevron NA Expl. & Prod. Co.*, No. CV H-17-1419, 2018 WL 3559103, at *15 (S.D. Tex. July 24, 2018) (granting *summary judgment*, finding that claims the defendant "closely supervised [the plaintiff], assigned her new and additional tasks, and required her to complete those tasks expeditiously, is . . . certainly not harassment that is sufficiently severe or pervasive to create a hostile work environment").

consider evidence regarding whether other VA employees received similar letters in similar situations. The evidence may ultimately shed light on the difficulty of conducting home inspections, whether such duties are outside Mr. Golden's job description, and whether similarly situated coworkers were also expected to conduct home inspections.

Finally, Mr. Golden claims that the VA filed fraudulent documents into the EEOC record. The VA argues that the VA inadvertently filed early draft versions of those documents, and that the EEOC administrative law judge did not rely on the allegedly fraudulent documents. Again, the VA makes arguments that are unavailing at the motion to dismiss stage where the Court must accept the well-pleaded allegations of the plaintiff as true. The VA also asserts that Mr. Golden is essentially making a fraud claim that is barred by the Federal Torts Claims Act. *See Saraw P'ship v. United States*, 67 F.3d 567, 569 (5th Cir. 1995) (quoting 28 U.S.C. § 2680(h)) (explaining that the United States has retained sovereign immunity for "claims 'arising out of . . . misrepresentation'"). But the VA has not offered any authority applying the FTCA's bar to a Title VII hostile work environment claim. The Court also notes that neither party has offered any authority governing whether activity occurring within the context of litigating before the EEOC—even wrongful activity—does or does not affect a term, condition, or privilege of employment. Based on the arguments the Court has before it, then, the Court cannot dismiss Mr. Golden's hostile work environment claim.

### iii. Affirmative Defense

The VA asserts that Mr. Golden's hostile work environment claim also should be dismissed because the VA alleges that Mr. Golden never reported the alleged harassment to his managers at the hospital. The fifth element of a hostile work environment claim is that "the victim's employer

knew or should have known of the harassment and failed to take prompt remedial action."

*E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007). But "[w]hen a supervisory

employee is involved, once the plaintiff satisfies [the first] four elements [of a *prima facie* hostile

work environment claim], an 'employer is subject to vicarious liability to a victimized employee.'"

*Beaumont v. Tex. Dep't of Crim. Just.*, 468 F. Supp. 2d 907, 918 (E.D. Tex. 2006) (quoting *Watts*

*v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999)). That is because the Supreme Court has found that

"[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile

environment created by a supervisor with immediate (or successively higher) authority over the

employee." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S. Ct. 2275, 141 L. Ed. 2d 662

(1998). Mr. Golden has, in fact, alleged that the harassment he suffered was committed by a

supervisor at the VA—Supervisor Esteve.

But an employer may raise an affirmative defense to vicarious liability "[w]hen no tangible

employment action is taken." *Id.* The defense requires that an employer prove two elements by a

preponderance of the evidence: "(1) the employer exercised reasonable care to prevent and correct

promptly any harassing behavior, and (2) the harassed employee unreasonably failed to take

advantage of any preventive opportunities provided by the employer." *Williams v. Admin. Rev. Bd.*,

376 F.3d 471, 478 (5th Cir. 2004) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S.

Ct. 2257, 141 L. Ed. 2d 633 (1998)).

The VA's attempt to raise this affirmative defense presents multiple problems. Foremost,

"[d]ismissal based on an affirmative defense is proper only when the 'defense appears on the face

of the pleadings.'" *Helpful Hound, L.L.C. v. New Orleans Bldg. Corp.*, 333 F. Supp. 3d 593, 601

(E.D. La. 2018) (quoting *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 726 (5th Cir.

16

2013)). The VA cannot show from the face of the pleadings here that either of the two elements are met. Instead, the VA relies on Mr. Golden's EEOC affidavit to allege that he did not report any of Supervisor Esteve's alleged harassment. Further, no indication has been made that the VA has exercised reasonable care to prevent and correct such alleged harassment.

### iv. Conclusion

In sum, "a motion to dismiss under 12(b)(6) is viewed with disfavor and is rarely granted." *IberiaBank Corp. v. Illinois Union Ins. Co.*, 953 F.3d 339, 345 (5th Cir. 2020) (quoting *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013)). While each incident alleged may not, individually, be sufficient to state a claim for hostile work environment, when taken together Mr. Golden has met the low bar of plausibility. *See E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 401 (5th Cir. 2007) ("Although no single incident of harassment is likely sufficient to establish severe or pervasive harassment, when considered together and viewed in the light most favorable to the [the plaintiff], the evidence shows a long-term pattern of ridicule sufficient to establish a claim under Title VII."). Moreover, based on the pleadings, the VA has not established an affirmative defense against vicarious liability. The Court does not express any opinion as to whether Mr. Golden will ultimately be able to prove that he suffered severe and pervasive harassment based on his race and sex. The Court denies the VA's motion to dismiss the hostile work environment claim.

### 2. Plaintiff La Quetta Golden's "Equitable Duty" Claim

La Quetta Golden does not claim she has ever been employed by the VA. Instead, she claims that, by virtue of her marriage to Mr. Golden, she has a fifty percent vested interest in his pension fund, thrift savings account, and Social Security account. [4], pg. 7. By failing to promote Mr. Golden, Mrs. Golden argues that the VA reduced the value of his retirement accounts—thus

violating an "equitable duty" the VA owed to Mrs. Golden. *Id.* She did not explain in the Amended Complaint the source of the "equitable duty" allegedly owed to her by the VA, nor did she elaborate any further on her novel legal theory. In the VA's Motion to Dismiss, the VA argued that Mrs. Golden's "equitable duty" claim should be dismissed because (1) Title VII does not grant derivative claims to the family members of a discriminated-against employee, and (2) she failed to timely exhaust her claim with the EEOC. [13], pp. 9-10.

Mrs. Golden responded by explaining that her claim does not arise from Mr. Golden's Title VII claim or rights; rather, she argues that her claim is an "equitable and implied contract claim." [16], pg. 9. Mrs. Golden argues that the Tucker Act, 28 U.S.C. §§ 1346(a)(2) and 1491(a)(1), permits her to bring this contract claim against the VA. In turn, the VA argues that Mrs. Golden has not shown the elements of an implied contract with the VA.

But before the Court determines whether Mrs. Golden has adequately raised a breach of contract claim against the VA, it must determine whether it has jurisdiction over her claim. "Federal courts, both trial and appellate, have a continuing obligation to examine the basis for their subject-matter jurisdiction." *MCG, Inc. v. Great W. Energy Corp.*, 896 F.2d 170, 173 (5th Cir. 1990). "The issue may be raised by parties, or by the court *sua sponte*, at any time." *Id.* (citing FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.")). "A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case." *Celestine v. TransWood, Inc.*, 467 F. App'x 317, 318 (5th Cir. 2012) (citing *Home Builders Assn. of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). "[T]he plaintiff constantly bears

the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).

Mrs. Golden claims that the Tucker Act gives this Court jurisdiction to address her implied or equitable contract claim against the VA. The Tucker Act, 28 U.S.C. § 1491, and the Little Tucker Act, 28 U.S.C. § 1346(a), waive the United States' sovereign immunity for breach of express or implied contracts. The Tucker Act states in its relevant part: "The United States *Court of Federal Claims* shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1) (emphasis added). In turn, the Little Tucker Act states in its relevant part: "The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of . . . [a]ny other civil action or claim against the United States, *not exceeding $10,000 in amount*, founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1346(a)(2) (emphasis added). "Waivers of sovereign immunity must be strictly construed." *Wilkerson v. United States*, 67 F.3d 112, 118 (5th Cir. 1995) (citing *United States v. Sherwood*, 312 U.S. 584, 590, 61 S. Ct. 767, 769–70, 85 L. Ed. 1058 (1941)). Thus, the Fifth Circuit holds that "[i]f the claim exceeds $10,000, the Tucker Act grants exclusive jurisdiction to the Claims Court." *Amoco Prod. Co. v. Hodel*, 815 F.2d 352, 358 (5th Cir. 1987); *Wilkerson*, 67 F.3d at 118; *Refaei v. McHugh*, 624 F. App'x 142, 148 (5th Cir. 2015).

To determine whether a claim falls within the exclusive jurisdiction of the Court of Federal Claims, a court must analyze whether: "(1) the action is against the United States; (2) the action is founded upon the Constitution, federal statute, executive regulation, or government contract; and (3) the action seeks monetary relief in excess of $10,000." *Amoco Prod. Co.*, 815 F.2d at 359.

An action against the Department of Veterans' Affairs is an action against the United States for the purposes of the Tucker Act. *Saunders v. Wilkie*, No. CV 19-11482, 2020 WL 6382888, at *5-6 (E.D. La. Oct. 30, 2020) (finding no jurisdiction over breach of contract claim against the VA when the amount in controversy exceeded $10,000); *see also Amoco Prod. Co.*, 815 F.2d at 359 (internal quotation omitted) ("It is not necessary that the United States be named as a party; an action against a federal agency or official will be treated as an action against the sovereign if the judgment sought would expend itself on the public treasury or domain."). Moreover, Mrs. Golden has stated that her "equitable duties" claim is based upon breach of an implied contract. The only question remaining is whether she seeks monetary relief in excess of $10,000.

In the Amended Complaint, the Goldens request $120,000 for "back pay, reimbursement of sick leave and annual leave as well as reimbursement of medical bills resulting from the emotional distress endured"; $300,000 for "enduring the intentional and direct harassment from the Defendant's employees"; "a monetary award to restore Plaintiffs' Federal Pension Account, Plaintiffs' Thrift Savings Account and Plaintiffs' Social Security Retirement Account"; and attorney fees and other costs. [4], pp. 8-9. On its face, then, the Amended Complaint requests far more than $10,000 in relief. Arguably, the specific monetary requests of $120,000 and $300,000 may apply only to Mr. Golden's Title VII claims, rather than Mrs. Golden's contract claim. However, "[p]laintiffs seek[ing] to invoke the subject matter jurisdiction of the federal district courts bear the burden of alleging that their claims do not exceed the $10,000.00 jurisdictional limit established by the Tucker Act." *Enplanar, Inc. v. Marsh*, 829 F. Supp. 848, 851 (S.D. Miss. 1992), *aff'd*, 25 F.3d 1043 (5th Cir. 1994); *see also McNeil v. Adams Cnty.*, No. 5:05-cv-180-KS, 2006 WL 2372253, at *1-2 (S.D. Miss. Aug. 15, 2006) (finding lack of subject matter jurisdiction

when plaintiff failed to specify the amount of damages she sought or expressly waive recovery in excess of $10,000). By requesting a judgment including "all emoluments to which she is entitled including restoration of retirement pension, retirement savings and social security retirement accounts to begin two years prior to January 2016 until the date a judgment has been entered," Mrs. Golden appears to seek more than $10,000. At the very least, she has failed to specify the requested monetary relief or expressly limit her recovery to less than $10,000.

Moreover, 28 U.S.C. § 1631 states:

> Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed.

Thus, having discovered a lack of jurisdiction for a contract claim against the United States, district courts have transferred the contract claim to the Federal Claims Court rather than dismiss it. *See McNeil*, 2006 WL 2372253, at *2; *Saunders*, 2020 WL 6382888, at *6.

However, the parties have not briefed the subject matter jurisdiction question arising from Mrs. Golden's implied contract claim. The Court is loath to dismiss the claim or transfer it to the Federal Claims Court without giving the parties an opportunity to address the Court's jurisdiction. Thus, the Court denies without prejudice VA's request to dismiss Mrs. Golden's "equitable duty" claim. The VA may file a new motion to dismiss, addressing:

1. The Court's jurisdiction, or lack thereof, over Mrs. Golden's "equitable duty" claim;

2. If the VA believes that this Court does not have jurisdiction, whether Mrs. Golden's "equitable duty" claim should be dismissed or transferred to the Federal Claims Court.

**3. Motion to Seal Order to Show Cause**

Mrs. Golden also filed a sealed Motion [9] to Seal the Order to Show Cause [2] entered by District Judge Ozerden before he recused himself. Mrs. Golden has been representing both herself and her husband Mr. Golden throughout the lawsuit, though it does not appear that Mrs. Golden is licensed to practice law. Judge Ozerden's Order to Show Cause [2] directed Plaintiff William Golden to show cause why he should not be required to file an amended complaint either *pro se* or through a licensed attorney rather than through Mrs. Golden. In response, the Goldens filed the Amended Complaint [4] adding Mrs. Golden as an additional *pro se* plaintiff. Judge Ozerden then recused. Mrs. Golden is the only Plaintiff who signed the Response [15] to the Motion to Dismiss [12] and its supporting Memorandum [16], even though the Response purportedly represents the arguments of both Plaintiffs.

"[C]ourts are duty-bound to protect public access to judicial proceedings and records. *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021). The Fifth Circuit has emphasized that "courts should be ungenerous with their discretion to seal judicial records." *Id.* at 418. Thus, "the working presumption is that judicial records should not be sealed." *Id.* at 419. To determine whether a judicial record should be sealed, "the court must balance the public's common law right of access against the interests favoring nondisclosure." *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 450 (5th Cir. 2019) (quoting *Sec. & Exch. Comm'n. v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993)). If the district court seals a record, it must explain its decision with enough detail to allow appellate review. *Binh Hoa Le*, 990 F.3d at 419.

Judge Ozerden's Order to Show Cause [2] remains relevant to this case, as it appears that Mrs. Golden is still representing both herself and her husband despite not being licensed to practice

law in this state. "In federal court, parties are guaranteed by statute the right to proceed *pro se*." *Sprague v. Dep't of Fam. & Protective Servs.*, 547 F. App'x 507, 508 (5th Cir. 2013) (citing 28 U.S.C. § 1654)). But a party cannot proceed *pro se* on behalf of anyone other than herself. *Johnson v. Lufkin Daily News*, 48 F. App'x 917 (5th Cir. 2002) (citing *Gonzales v. Wyatt*, 157 F.3d 1016, 1020-22 (5th Cir. 1998)) (holding that a *pro se* plaintiff could not represent his wife and child); *see also Aduddle v. Body*, 277 F. App'x 459, 462 (5th Cir. 2008) (holding that a *pro se* plaintiff could not represent his granddaughter). Thus, even though Mrs. Golden may represent herself and her own claim against the VA, she cannot represent her husband Mr. Golden and his claims.

Additionally, Mrs. Golden's Motion to Seal does not offer any interest in sealing the Order that outweighs the public's right of access. For example, she has not demonstrated that the Order must be sealed for such important interests as "protecting trade secrets or the identities of confidential informants," or that the Order might "endanger lives or threaten national security." *Binh Hoa Le*, 990 F.3d at 417, 419. Mrs. Golden's Motion [9] to Seal is denied. Moreover, the Plaintiffs are cautioned that Mrs. Golden may not represent Mr. Golden any further. In the future, Mr. Golden must prepare and sign his own filings or have a licensed attorney appear on his behalf.

## IV. CONCLUSION

Mr. Golden has pled sufficient factual matters for his hostile work environment claim to survive dismissal at this stage. Further, the Court denies the VA's request to dismiss Mrs. Golden's "equitable duty" claim without prejudice in order to give the parties the opportunity to address whether the Court (a) has jurisdiction over her claim and (b) if jurisdiction is not present, whether the proper remedy is dismissal or transfer to the appropriate court. Finally, Mrs. Golden's

Motion [9] to Seal the Order to Show Cause is denied. Mrs. Golden is warned that she may not legally represent Mr. Golden in this Court.

THEREFORE, IT IS ORDERED AND ADJUDGED that, for the reasons stated, the VA's Motion to Dismiss [12] is DENIED. The VA's request to dismiss Mr. Golden's hostile work environment claim is denied. The VA's request to dismiss Mrs. Golden's "equitable duty" claim is denied WITHOUT PREJUDICE.

IT IS FURTHER ORDERED AND ADJUDGED that the VA may renew its Motion to Dismiss, limited to Mrs. Golden's "equitable duties" claim and addressing the Court's jurisdiction. A separate Order will be entered setting a briefing schedule.

IT IS FUTHER ORDERED AND ADJUDGED that La Quetta Golden's Motion [9] to Seal the Order to Show Cause is DENIED.

THIS, the 29th day of March, 2022.

_____
TAYLOR B. McNEEL
UNITED STATES DISTRICT JUDGE