IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**WILLIAM C. GOLDEN**                                                                      **PLAINTIFF**

**v.**                                                      **CIVIL ACTION NO. 1:21-cv-129-TBM-BWR**

**DENIS RICHARD MCDONOUGH,**
***Secretary of the Department of Veterans Affairs***                          **DEFENDANT**

## MEMORANDUM ORDER AND OPINION GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

William Golden, a black male Registered Nurse, is employed as a nurse case manager with the Mental Health Intensive Case Management ("Mental Health") program at the Biloxi Veteran Affairs Hospital ("VA"). Mr. Golden has sued Denis Richard McDonough, the Secretary of the Department of Veterans Affairs, alleging that the VA discriminated against him when he was denied a promotion allegedly because of his race and sex in violation of Title VII. Mr. Golden also accused the VA of subjecting him to a hostile work environment when his supervisor gave him a letter of expectation because of a report of poor living conditions for one of his patients. Further, Mr. Golden alleges that he endured a hostile work environment because he was asked to conduct an intake screening on a patient with violent tendencies, even though he declined to see the patient.

Now before the Court is the VA's Motion for Summary Judgment [66]. For the reasons fully discussed below Mr. Golden has not cast sufficient doubt on the VA's legitimate, nondiscriminatory reasons for denying his promotion such that a reasonable fact finder would infer pretext for racial discrimination. More specifically, Mr. Golden does not dispute that the Nursing Board who denied his promotion was a "blind" board such that they did not know his race at the time his promotion was denied. And Mr. Golden does not dispute that he missed the deadline to

try and obtain an educational waiver for the promotion he sought. Mr. Golden also does not argue that the reasons the VA states for denying his promotion are false or unworthy of credence. Further, Mr. Golden did not provide as much information with the required specifics to the Board as did others who sought promotions, nor did he try to amend his submission for a promotion when he had a chance to do so. Finally, Mr. Golden has not shown a genuine issue of material fact to support his claim of a hostile work environment. Accordingly, the VA's Motion for Summary Judgment [66] is GRANTED, and Mr. Golden's Motion for Partial Summary Judgment [63] is DENIED as to all claims.

## I. BACKGROUND

In 2016, Mr. Golden sought a promotion from a Nurse II position to a Nurse III position with the VA and was denied. [66-10]. Mr. Golden has an Associate's degree in nursing and a Nurse Practitioner's degree and has been a Registered Nurse for over forty years. [63-11]. At the time he sought the promotion with the VA, Mr. Golden had received a satisfactory rating on his proficiency report as a Nurse II. *Id.*

But to be a Nurse III, a nurse must first have a satisfactory proficiency report and have at least three to five years of increasingly complex nursing practice. [66-1]; [66-5]. Next, a Nurse III is also required to have a Master's degree in nursing.[1] [66-5]. Once those qualifications are met, the Nursing Board then determines whether the nurse has met the final qualification criteria for the next higher grade level in the applicable VA qualification standard. [66-8]. In determining

---

[1] According to the VA, the full educational requirement to be a Nurse III is as follows: "(1) a Master's degree in nursing or related field with Bachelors of Science in Nursing, (2) Bachelor's degree in a related field, or (3) Doctoral degree in nursing or related field." [66-5]. But the parties only reference Mr. Golden's lack of a Master's degree in nursing. Therefore, the only portion of the educational requirement to be mentioned in this opinion is "a Master's degree in nursing."

whether the nurse has met the final qualifications, the Nursing Board looks at the proficiency report of the employee to determine how the employee faired at their current unit level. [67], p. 5-6. The Nursing Board also determines whether the employee has provided any additional information that would show that they have reached the qualification level of a Nurse III and serviced the entire VA program in general. *Id.*

Mr. Golden met the initial qualifications except the educational requirement because he did not have a Master's degree in nursing. So, Mr. Golden offers William Scott Keber—a white man—as a comparator to show that he was racially discriminated against because Mr. Keber was promoted without having a Master's degree in nursing and Mr. Golden was not. [64]. Mr. Keber was a Nurse II in the same Mental Health program as Mr. Golden and they shared Louise Esteve as a supervisor for some time. [15-5]. In fact, Mr. Golden essentially trained Mr. Keber. [64], p. 3; [66-23]. Yet in October 2015, Mr. Keber was promoted to Nurse III and Mr. Golden was not. [66-22].

At the time of Mr. Keber's approved promotion, Mr. Keber had worked as a nurse for twenty-one years, had satisfactory and above proficiencies, but only had a Bachelor's degree in nursing. *Id.* Mr. Keber did not meet the educational requirement of having a Master's degree in nursing, yet Mr. Keber was granted an educational waiver for him to receive his promotion. *Id.* The educational waiver allowed the Nursing Board to promote Registered Nurses from a Nurse II to a Nurse III without having obtained the required Master's degree in nursing. [63-26]. The educational waiver ended December 31, 2015. [66-9]. And Mr. Golden did not seek the promotion

until January 2016.[2] [66-10]. But the record shows that after the educational waiver cutoff, Rebecca Anderson, and Patricia Goodnite—both white women—received educational waivers on January 20, 2016, and February 4, 2016, respectively. [66-18]; [66-21].

Again, the Nursing Board relies on the employee's proficiency reports to determine whether the employee has provided additional information that meets the qualifications to be promoted to a Nurse III. [67], p. 5-6. Based on this, the VA contends that in comparison to Mr. Golden's proficiency report, Mr. Keber's, Ms. Anderson's, and Ms. Goodnite's proficiency reports specifically told the Nursing Board problems and solutions that those employees implemented that benefited the entire VA program, not just their specific units. [69], p.4; [67], pps. 5-6; [69], p. 4. Further, the record supports that the Nursing Board is "blind" as to an applicant's race and sex. [67], p. 7. And the two people on the Nursing Board who knew Mr. Golden at the time he sought the promotion, Ms. Esteve and Mr. Keber—Mr. Golden's comparator and a person promoted using the educational waiver—recused themselves from the decision-making portion of his promotion evaluation. [66-11]; [66-21].

Nevertheless, after Mr. Golden submitted his 2015 proficiency to the Nursing Board in early January 2016, he was informed that he did not meet the education experience and was denied

---

[2] At the summary judgment motion hearing, the VA explained that a Nurse and their supervisor work collaboratively to complete the Nurse's proficiency report. The VA states, and the record shows that the Nurse signs off on the report once it is completed, and then the Nurse's supervisor submits that report to the Nursing Board for review. [66-10]; [66-18]; [66-20]; [68-3]. As it relates to Mr. Golden, the record shows that though Mr. Golden's proficiency report was to cover his performance from 12/7/2014 to 12/7/2015, Mr. Golden and his supervisor did not sign and submit the document until January 8, 2016. It is unclear how the collaboration works between the Nurse and their supervisor, or whether the dates that are covered are based on the hiring dates of the individual employee. But what is clear is that both Mr. Golden and his supervisor signed his proficiency report in early January 2016, and they had until December 31, 2015, to qualify for the educational waiver. They did not meet that deadline. It is also clear that Mr. Keber, Ms. Goodnite, and Ms. Anderson's proficiency reports were all signed and submitted before the waiver deadline. [66-18]; [66-20]; [68-3].

his promotion. [63-29]. Mr. Golden then drafted a memorandum for reconsideration. [66-15]. Sara Kostmayer, a Chief Nurse at the VA, responded to Mr. Golden's request for reconsideration and noted that his memo for reconsideration did not have any additional information that addressed how he met the qualifications for a Nurse III. [66-16]. Ms. Kostmayer's response to Mr. Golden specifically laid out, with examples, how Mr. Golden should submit his reconsideration, highlighting exactly what information is needed and how the information should be formatted.[3] [66-16]. But Mr. Golden concedes that, though he had a chance to do so, he did not submit any further information. [66-17].

As to Mr. Golden's hostile work environment claim, at the time of the alleged harassment, Mr. Golden's supervisor was Louise Esteve. [66-1]. Mr. Golden asserts that Ms. Esteve racially discriminated against him because he was asked to inspect his patients' homes, while his white coworkers were not asked to do the same. [64], p. 22. As support for this claim, Mr. Golden states that on September 5, 2015, Ms. Esteve requested Mr. Golden respond to a report she received on August 27, 2015, from one of his co-workers that insinuated that Mr. Golden did not report the alleged abuse of one of his patients. [64], p. 19. Mr. Golden contends that this incident made him very worried about his job security because his "ethics and character were questioned" when Ms. Esteve asked him about the caregiver of this patient and queried whether the caregiver was a member of his church and whether the caregiver paid tithes to his church. [64], p. 19. At the time

---

[3] In response to Mr. Golden's request for reconsideration, Ms. Kostmayer explained that "before [your reconsideration] can be reviewed by the [Nursing Board] there are a few items that need to be corrected." [66-16]. The email explained that "[t]he memo for reconsideration did not have any additional information to address how you met the [additional criteria] that were not met by your previous review at the level of a Nurse III" *Id.* To assist Mr. Golden in correcting this issue, Ms. Kostmayer explained that "[a]ll examples are best stated in the following format: (i) What was the problem []; (ii) What did you do (Action); (iii) Who did it impact [] (Veterans, Co-workers, Program, etc); (iv) What was the result []." *Id.*

of this alleged incident, Mr. Golden served as the pastor to a local church. *Id.* Because of all of this, Mr. Golden was asked to inspect his patients' homes. [63-49]; [63-56]; [64], p.22. In her deposition Ms. Esteve testified that there were three incidents in a six-month period where veteran patients of Mr. Golden's were in unsafe situations, and this incident prompted her to ask him to conduct a quick inspection of the homes of the patients he saw. [66-25], pps. 237-241. Still, the record does not show that Mr. Golden ever inspected the homes of his patients or how many times he was asked to do so, in comparison to his white co-workers.

Secondly, Mr. Golden asserts that the harassment he experienced was also based on his membership of a protected class as a man because he was asked multiple times to screen a patient who had a history of violence. [64], p. 20. As support for this claim, Mr. Golden states that Ms. Esteve knew another white female nurse had denied screening a patient because of his violent tendencies and Ms. Esteve repeatedly asked him to screen the patient. *Id.* Mr. Golden claims that because of these requests, he was of the belief that he would be fired if he did not accept the patient. *Id.* But Mr. Golden still denied the screening and was not fired or forced to conduct the screening. [15-12].

After both alleged bouts of harassment, Mr. Golden received a letter of "expectation" on January 21, 2016, from Ms. Esteve. [63-49]. Mr. Golden asserts that receiving this letter served as harassment that affected a term, condition, or privilege of employment. [64], pps. 21-24. Ms. Esteve testified that the letter was to explain her expectations of him in the workplace, that the letter Mr. Golden received was not a letter for disciplinary action, and that she gave out many similar letters to other employees. [66-2], pps. 59, 85-86; [66-25]. Mr. Golden testified that the letter was not added to his personnel file, nor did it affect his work or pay. [66-1].

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). It is the burden of the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there is a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

"A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC & Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate." *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

It is not permissible to make credibility determinations or weigh the evidence at the summary judgment stage. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citation omitted). When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). Yet, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted).

## III. RACE DISCRIMINATION

Title VII makes it unlawful for an employer to discriminate against an employee "because of" his race. *See* 42 U.S.C. § 2000e—2(a)(1); *see also* 42 U.S.C. § 1981 (prohibiting intentional racial discrimination). Because Mr. Golden lacks direct evidence[4] of discrimination, this Court must apply the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *Sanders v. Christwood*, 970 F.3d 558, 561 (5th Cir. 2020).

The first step in the *McDonnell Douglas* framework requires Mr. Golden to make a prima facie case of race discrimination. *Sanders*, 970 F.3d at 561. The burden of production then shifts to the VA to proffer a legitimate, nondiscriminatory reason for its action. *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016). If the VA makes this showing, "the presumption of discrimination disappears," and, Mr. Golden "must then produce substantial evidence indicating that the proffered, legitimate[,] nondiscriminatory reason is a pretext for discrimination." *Outley*, 840 F.3d at 216.

Under the prima facie case portion of this opinion, the focus will be on the explicit objective qualifications of a Nurse III. The Department of Labor, Office of Federal Contract Compliance defines objective selection criteria as "criterion [that can be] independently verified."[5] The agency states that "[w]ith objective criteria, different people measuring the criteria will reach the same

---

[4] In the context of Title VII, the Fifth Circuit has defined direct evidence of discrimination as "any statement or written document showing a discriminatory motive on its face; a statement or document which shows on its face that an improper criterion served as a basis—not necessarily the sole basis, but a basis—for the adverse employment action is direct evidence of discrimination." *Herster v. Bd. of Supervisors of Louisiana State Univ.*, 887 F.3d 177 (5th Cir. 2018) (internal citations omitted).

[5] U.S. DEPARTMENT OF LABOR, Office of Federal Contract Compliance Programs, Federal Contract Compliance Manual, 2M01 Distinguishing Objective from Subjective Selection Criteria (2023), https://www.dol.gov/agencies/ofccp/manual/fccm/2m-employment-activity-data-requirements/2m01-distinguishing-objective#:~:text=b.,and%20meets%20such%20a%20criterion.

results because they are clearly defined or quantifiable in nature. For example, whether [] the individual earned a certain diploma or degree is an independently verifiable fact." *Id.*

Then, under the last two subheadings, the focus will shift to the alleged subjective job qualifications as directed by law. *Medina v. Ramsey Steel Co ., Inc.*, 238 F.3d 674, 681 (5th Cir. 2001) ("An employee must demonstrate that he meets objective hiring criteria at the prima facie case stage, and the issue of whether he meets the subjective hiring criteria is dealt with at the later stages of the analysis."). For clarity purposes, the Department of Labor defines subjective selection criteria as criterion that "requires judgment in their application. Therefore, people can differ in opinion on whether a particular candidate possesses and meets such a criterion. For example, two selecting officials may easily have differing opinions on whether a candidate has good leadership skills."[6]

The Court now moves to the first step in the *McDonnell Douglas* framework—determining whether Mr. Golden has met his burden in establishing a prima facie case for racial discrimination.

## A. Mr. Golden meets his burden of proving a prima facie case related to the VA's denial of his promotion.

To establish a prima facie case of discrimination, Mr. Golden must show that he: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *Sanders*, 970 F.3d at 561 (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007)). It is undisputed that Mr. Golden is a black man and, that he suffered an

---

[6] *Id.*

adverse employment action by not being promoted from a Nurse II position to a Nurse III position.

Also, Mr. Keber—a white man, and Mr. Golden's chosen comparator—was promoted from Nurse

II to Nurse III.[7] [64], p. 5-8; [67], p. 19-21. So for Mr. Golden to meet his prima facie case burden,

he must put forth evidence that others who were promoted also lacked the objective qualifications

for the job he sought. *Johnson v. Louisiana*, 351 F.3d 616, 624 (5th Cir. 2003).

In other words, an employee may "show[ ] themselves to be qualified for the positions as

measured by the standards applied to those actually hired." *Id.* at 625. If others who were promoted

were not required to have the educational requirement, Mr. Golden may be able to show he was

"as qualified as" they were. *Id.* Further, "[a]n employer may establish job requirements and rely

on them in arguing that a prima facie case is not established because the employee is not 'qualified.'

However, only objective requirements may be used in making this argument." *Johnson*, 351 F.3d

at 622; *Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1123 (9th Cir. 2009).

The VA contends that Mr. Golden does not satisfy the second prong of establishing a prima

facie case because Mr. Golden was not "qualified" for the Nurse III position because he did not

meet the educational requirement for the position. [67], p. 22. The VA further states that Mr.

Golden not only failed to meet the initial qualifications because of the educational requirement, but

that the later criteria were "non-subjective," and Mr. Golden also did not meet those. [73]. But

the VA's argument of non-subjectiveness for the later criteria falls flat. In determining whether a

nurse can be promoted, the Nursing Board considers things like, "whether the nurse has made

---

[7] In response to the VA's Motion for Summary Judgment [72], p. 7, Mr. Golden clarified that his chosen comparator is Mr. Keber, and the two proffered white female nurses—Rebecca Anderson and Patricia Goodnite—are to be used strictly for the Court's pretext analysis. Therefore, Mr. Golden's sex discrimination claim fails at the prima facie stage and the Court focusses only on his race discrimination claim.

changes or contributions that affect the VA at the system level by reviewing things like whether a nurse has implemented an educational plan to meet the changing needs of the program, whether a nurse coaches in team building, and if a nurse demonstrated leadership in collaboration with others in research activities," among other similar subjective things. [66-8]; [73-4]. This kind of criteria requires judgment in reviewing a nurse's application, such that the opinions of each member of the Nursing Board could differ, which makes them subjective. Here, the objective requirements of a Nurse III are, (1) have a satisfactory proficiency report, (2) have at least three to five years of increasingly complex nursing practice, and (3) have a Master's degree in nursing. [66-1]; [66-5].

It is undisputed that Mr. Golden did not have the requisite Master's degree for a promotion to a Nurse III and was therefore unqualified for the promotion he sought. But Mr. Golden has chosen Mr. Keber—a white man who was promoted from a Nurse II position to a Nurse III position without meeting the educational requirement—as a similarly situated employee outside of his protected class. *Sanders*, 970 F.3d at 561. Mr. Golden and Mr. Keber held the same position in the same department, with the same requirements before Mr. Keber's promotion utilizing the educational waiver. [63-18], p. 36; [68-3]. But the VA argues that the reason Mr. Keber received the educational waiver was that he was deemed to have met the other subjective qualification criteria of a Nurse III, unlike Mr. Golden. [64]; [68-3].

Still, the only "objective" portion of the Nurse III hiring criteria that Mr. Golden did not meet is the Master's degree in nursing requirement. [67], p. 6. And the VA had an educational waiver that it used for employees who did not meet the education requirement for a promotion. [66-3]. Mr. Keber was granted one of those waivers even though he did not have a Master's degree in nursing. [66-22]. It is enough that the VA found Mr. Keber to be qualified for the Nurse III

position even though he did not have a Master's degree in nursing and was granted an educational waiver while Mr. Golden, who also did not meet the objective education criteria, was not promoted. [15-5]; [67]; *Johnson*, 351 F.3d at 625 (holding that [Mr. Golden] only needs to show himself to be qualified for the position as measured by the standards applied to those actually hired); *Smith v. City of St. Martinville*, 575 F. App'x 435, 439 (5th Cir. 2014) (per curiam) ("[W]here an employer declines to apply a particular objective employment requirement equally, … a plaintiff's failure to meet that requirement does not render him 'unqualified.'"); *Friend v. McAdams*, 861 F. App'x 825, 829 (5th Cir. 2021) ("[i]f others who were promoted were not required to [meet the education requirement], [Mr. Golden] may be able to show [he] was 'as qualified as' they were."); *Sledge v. Goodyear Dunlop Tires N. Am., Ltd.*, 275 F.3d 1014, 1020 (11th Cir. 2001) (finding that the plaintiff could not be deemed "unqualified" based on his failure of a test that was not applied equally to all employees).

Therefore, when viewing the facts in the light most favorable to the Plaintiff, as the Court must do at this stage, Mr. Golden has put forth a prima facie case of racial discrimination because he has shown himself to be just as objectively qualified as Mr. Keber to have received an educational waiver. *Johnson*, 351 F.3d at 625; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (finding that at the summary judgment stage, this Court must view the facts below in the light most favorable to Mr. Golden as the non-moving party).

**B. The VA has met its burden by providing legitimate, nondiscriminatory reasons for Mr. Golden's denial of a promotion.**

At this point in the *McDonnell Douglas* burden-shifting framework, the VA must produce legitimate, nondiscriminatory reasons for not promoting Mr. Golden. *Watkins v. Tregre*, 997 F.3d

275, 282 (5th Cir. 2021). The VA's "burden is merely one of production; as such, 'it can involve no credibility assessment.'" *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007).

The VA states that the reason Mr. Golden was not promoted to Nurse III was because he did not meet the additional criteria for a Nurse III position as evaluated by the Nursing Board. [67], p. 17. The VA concedes that Mr. Golden had a satisfactory proficiency rating and had the requisite years of experience, but firmly states that Mr. Golden did not receive the educational waiver because the Nursing Board determined that he did not meet the other qualifications for a Nurse III position. [69], p. 2; [66-3]. The VA also states that even if Mr. Golden had met the qualification criteria, his proficiency was dated after the educational waiver cutoff deadline. [67], p. 20.

The VA asserts that for Mr. Golden to have met the other qualification criteria for a Nurse III, he would have needed to document specific instances of each qualification and the outcomes of those efforts. [67], pps. 5-6. For example, when considering an employee for a promotion, the Nursing Board looks at the proficiency to determine how the employee faired at their current unit level and whether they provided any additional information that would show that they have reached the level of Nurse III qualifications and serviced the entire VA program in general. [67], pps. 5-6. Mr. Golden, according to the VA, just did not provide enough substance for the Nursing Board to determine whether his work made an impact on the VA at a larger scale. [69], p. 4.

Still, Mr. Golden disputes the Nursing Board's review of his proficiency report and asserts that the qualification criteria is subjective and therefore, Mr. Golden failing to meet the

qualifications is not sufficient as a legitimate, nondiscriminatory reason to deny him a promotion.[8] [64], p. 14. But the Court is "not to assess the employer's credibility or untruthfulness of its reason at this stage of the inquiry." *Burton*, 798 F.3d at 231 (citing *Patrick v. Ridge*, 394 F.3d 311, 318 (5th Cir. 2004)). Further, these additional criteria for a promotion are the type of ordinary and normal promotion criteria that are regularly used by employers. And "mere disputes over an employer's assessment of an employee's performance do not create issues of fact." *Owens*, 33 F.4th at 831 (citing *Salazar v. Lubbock Cnty. Hosp. Dist.*, 982 F.3d 386, 389 (5th Cir. 2020)). Thus, the VA has met its burden and offered legitimate, nondiscriminatory reasons for its actions.

**C. Mr. Golden has not sufficiently rebutted the VA's reasons for denying him a promotion, failing to show pretext for racial discrimination.**

Since the VA produced a legitimate, nondiscriminatory reason for not promoting Mr. Golden, under the *McDonnell Douglas* framework the "presumption of discrimination disappears and [Mr. Golden] 'bears the ultimate burden of persuading the trier of fact by a preponderance of the evidence that [the VA] intentionally discriminated against him because of his protected status.'" *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011) (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001)). Mr. Golden must provide substantial evidence to raise a genuine issue of fact as to pretext. *Wallace*, 271 F.3d at 219-20. In other words, Mr. Golden "must put forward evidence rebutting each of the nondiscriminatory reasons [the VA] articulates." *Id.*

---

[8] The "subjective" qualification criteria Mr. Golden refers to here are explanations describing the nurse's involvement in some of the following: "(1) leadership at service, service line; looking for organized processes or systems; (2) leadership in anticipating risks, resolving ethical issues and dilemmas, etc.; (3) coaches in team building, active involvement in group accomplishments, sharing expertise outside of the facility; (4) demonstrates leadership in collaboration with others in research activities, across programs/services, to validate and improve practice, etc." [66-8].

Pretext is defined as a false reason given for an adverse employment action that hides or serves as a cover-up of the employer's true motive for the action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805, 93 S. Ct. 1817, 1826, 36 L. Ed. 2d 668 (1973), holding modified by *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993); *Godfrey v. Katy Indep. Sch. Dist.*, 395 F. App'x 88, 91 (5th Cir. 2010) (finding that pretext can be seen as "a coverup for a [] discriminatory decision"); *Barnes v. Bd. of Tr. of Univ. of Ill.*, 946 F3d 384, 389-90 (7th Cir. 2020) (describing pretext as not "just faulty reasoning or mistaken judgment on the part of the employer; it is [a] 'lie, specifically a phony reason for some action.'"). To establish pretext, Mr. Golden must show that the VA's "proffered explanation is false or 'unworthy of credence." *Laxton v. Gap Inc.*, 333 F.3d 572, 579 (5th Cir. 2003) (quoting *Wallace*, 271 F.3d at 221).

It should be noted that "[e]mployment laws do not transform federal courts into human resources managers, so the inquiry is not whether [the VA] made a wise or even correct decision to [not promote Mr. Golden]." *Owens*, 33 F.4th at 826 (citing *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005)). "Instead, '[t]he ultimate determination . . . is whether, viewing all of the evidence in a light most favorable to the plaintiff, a reasonable fact finder could infer discrimination.'" *Id.* (quoting *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902 (5th Cir. 2000)). "Employers are 'entitled to be unreasonable' in [their actions against] their employees 'so long as [they] do not act with discriminatory animus." *Owens*, 33 F.4th at 826 (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002)). "[I]t is the employee's burden to create a fact dispute as to reasonableness that could give rise to an inference of discrimination." *Owens*, 33 F.4th at 826 (citing *Sandstad*, 309 F.3d at 899). "A plaintiff need only bring evidence that

enables the jury to disbelieve that the employer's proffered justification truly motivated the adverse employment action." *Laxton*, 333 F.3d at 580 n.2 (citing *Reeves*, 530 U.S. at 147).

The VA states its reason for not promoting Mr. Golden was because the Nursing Board determined that he did not meet the additional, more subjective criteria for a Nurse III position that has been referenced previously. [67]. The VA also states that even if Mr. Golden had met this last criterion, his proficiency was dated after the educational waiver cutoff deadline. [66-10].

To rebut the VA's proffered legitimate, nondiscriminatory reasons, Mr. Golden asserts that because he had repeatedly obtained favorable proficiency ratings he is qualified to serve as a Nurse III. [64], p. 10. Next, he asserts that the qualification criteria are subjective, and so unfairly applied. [64], p. 14. Third, he asserts that the proficiency ratings are really all that matter because these ratings are arguably embedded within the other criteria that is required to be promoted to Nurse III because the VA's policy states that an employee "must receive at least a satisfactory rating on his proficiency in order to be considered for a promotion." [63-26]. Finally, Mr. Golden contends that the educational waiver denied to him had been used even after the December 31, 2015, expiration date to promote two white female co-workers, Ms. Anderson, and Ms. Goodnite. [64], p. 12. The Court will evaluate each of Mr. Golden's proffered rebuttals in turn.

### 1. Having a "favorable proficiency" is not enough to be qualified as a Nurse III.

Mr. Golden received a satisfactory rating and had the requisite experience to be a Nurse III. But whether Mr. Golden met the other qualification criteria to be promoted to a Nurse III is still undetermined. The Court has already discussed the objective and subjective requirements to be promoted to a Nurse III, and the record is clear and undisputed that a positive proficiency alone is not enough to qualify Mr. Golden for a promotion from a Nurse II to a Nurse III. [66-5]; [66-8].

2. **The VA is allowed to use subjective criteria in employment evaluations, and the proficiency report does not do away with the other criteria.**

Mr. Golden argues that his proficiency rating should have been enough to grant him a promotion because the proficiencies are actually embedded into the alleged subjective qualification criteria to such an extent that the subjective criteria are irrelevant. [64], p. 14.

The Fifth Circuit has discussed subjective criteria regarding employment decisions in *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 822 (5th Cir. 2022). In *Owens*, an Asian woman was placed on a performance improvement plan, and she alleged that employers may not use subjective criteria in employment decisions. *Id.* But the Fifth Circuit found that argument to not "hold water." *Id.* at 833.

Like in *Owens*, Mr. Golden makes a blanket assertion without any support that the VA's Nursing Board cannot use subjective criteria to evaluate whether an employee should be promoted. [64], pps. 14-17; [72], pps. 3-5. This is simply not true. But even if Mr. Golden had given specifics to support his argument that employers cannot use subjective criteria for evaluating promotions, the VA has put forth enough evidence to show that this subjective criterion is not the only thing it uses to determine whether an employee should be promoted. [66-5]; [66-8]. The VA states that Mr. Golden did not give enough information to the Nursing Board, and Mr. Golden does not really attempt to dispute this as false.

Still, the subjective criterion the Nursing Board relied on at this stage were things like, "implement[ing] [an] educational plan to meet changing program needs" or "coaches in team building," and "demonstrate[ing] leadership in collaboration with others in research activities, across programs [and] services." [66-8]. These things were listed on the proficiency report for Mr. Golden to explain how he met them with specifics, and what he provided was not enough for the

Nursing Board. Again, the Department of Labor defines subjective selection criteria as criterion that requires judgment in their application, such that people can differ in opinion on whether a particular candidate possesses and meets such a criterion.[9]

The burden remains on Mr. Golden, the party alleging discrimination, to rebut the VA's reasons for denying him a promotion with evidence that is sufficient in "'nature, extent, and quality' to make the inferential leap to discrimination a rational one." *Owens*, 33 F.4th at 826 n.7 (quoting *Crawford*, 234 F.3d at 903). Mr. Golden has not done so regarding the alleged subjective criteria. Mr. Golden has not given the Court anything to rely on to support that the VA cannot use subjective criteria in its promotion process—he merely states that it cannot. But without any support for this claim, there is not a genuine issue of material fact in order to defeat the granting of summary judgment. *Davis v. Farmers Ins. Exch.*, 372 F. App'x 517, 518 (5th Cir. 2010) ("[m]ere conclusory allegations are insufficient to defeat summary judgment").

### 3. The educational waiver was not given to Mr. Golden because he did not submit his proficiency report before the cutoff date, and at the very least, Mr. Golden has not shown the VA's explanation was false.

Finally, the record shows that after the educational waiver cutoff, Rebecca Anderson, a white woman received the waiver on January 20, 2016. [66-18]. And that Patricia Goodnite, another white woman, received the waiver on February 4, 2016. [66-21].

The VA states that Ms. Anderson was eligible for an educational waiver and promoted to Nurse III because she received a satisfactory or higher proficiency rating, met the experience

---

[9] U.S. DEPARTMENT OF LABOR, Office of Federal Contract Compliance Programs, Federal Contract Compliance Manual, 2M01 Distinguishing Objective from Subjective Selection Criteria (2023), https://www.dol.gov/agencies/ofccp/manual/fccm/2m-employment-activity-data-requirements/2m01-distinguishing-objective#:~:text=b.,and%20meets%20such%20a%20criterion.

requirements, and met all the other qualification criteria. [67], p. 9. Additionally, Ms. Anderson's proficiency was submitted in October 2015, and although the Nursing Board did not meet until January 2016 to review her proficiency, she still qualified for the educational waiver based on when she submitted her proficiency. *Id.* Ms. Goodnite similarly submitted her proficiency in November 2015, before the educational waiver cutoff. [66-20]. Even though Mr. Keber was not offered for proof of pretext, the Court notes that Mr. Keber's proficiency was submitted in October 2015. [66-22]. Unlike all three of those individuals, Mr. Golden's proficiency was not submitted until January 8, 2016, after the educational waiver had ended and after all staff had been informed of the cutoff. [66-9]; [66-10]. It is clear that Mr. Golden failed to meet the waiver deadline.[10] [66-10].

But, even if Mr. Golden had submitted his proficiency before the cut-off date, the VA asserts that Mr. Golden still did not qualify for a promotion because he did not submit enough information to the Nursing Board to meet the final criterion for a promotion. [67], p. 18. The VA explains that having at least a satisfactory proficiency rating is only the first consideration for a promotion to a Nurse III. [66-3].

According to the VA, for Mr. Golden to have met the additional subjective qualification criteria for a Nurse III, he would have needed to document specific instances of each qualification criterion and the outcomes of those efforts. [67], pps. 5-6. It also states that to be a Nurse III a nurse must show performance and leadership broad enough to improve the care for a group of patients.

---

[10] As stated in an earlier footnote, Nurses are tasked with completing their proficiency reports in collaboration with their supervisors. The Nurse must sign off on the proficiency report and then the supervisor submits the proficiency report to the Nursing Board for review. [66-10]. Though it is unclear why the collaboration between Mr. Golden and his supervisor was drawn out over a month past the timeline that the report covered, it is undisputed that Mr. Golden and his supervisor did not sign his proficiency report until January 8, 2016—eight days after the educational waiver had ended. [66-10].

[66-7], p. 8. A Nurse III is responsible for the documented outcomes at the program or service level. *Id*. And program or service level outcomes must be broad and complex. *Id*. These can be shown at any organizational level within the facility. *Id*. In reviewing Ms. Goodnite's and Ms. Anderson's proficiency reports, both nurses objectively met the Nursing Board's requirement of documenting specific instances of each qualification and outcome. [67], pps. 5-6; [69], p. 4.

As an example, Ms. Anderson wrote and published a Standard Operating Procedure for Medical Surgical Documentation Guidelines. [63-8]. Similarly, Ms. Goodnite, created a scrolling information bar, a Behavioral Health Service homepage, and activated and updated other individual service home pages. [66-20]. Moreover, though Mr. Golden did not offer Mr. Keber as a comparator at this stage, Mr. Keber's report was similar to that of Ms. Anderson and Ms. Goodnite. Mr. Keber's proficiency report showed that he led four other Mental Health Program case managers and five case managers in Pensacola Florida during staff and treatment team meetings. [68-3]. Also, Mr. Keber developed a process called the Bed Days of Care that was used by the behavioral health leadership, which extends past the Mental Health program and made a larger impact on the program as a whole. *Id*. Mr. Golden's proficiency report does not reflect any kind of specifics that would help the Nursing Board determine whether his actions helped the VA outside of his normal job duties.[11] [66-10]. Based on these facts, Mr. Golden has not shown that the VA's reasons for denying his promotion was "false or unworthy of credence." *Laxton*, 333 F.3d at 579.

---

[11] Mr. Golden's proficiency stated things like "[Mr. Golden] carries a caseload of [twelve] patients that he visits at least weekly and assists in health maintenance and community integration activities…his care plans and interventions are designed to keep his patients, who are high risk, [stable] and out of the hospital."

Further, when Mr. Golden received his denial of a promotion, he drafted a memorandum for reconsideration of his denial. [66-15]. Sara Kostmayer, a Chief Nurse at the VA, responded to Mr. Golden's request for reconsideration and noted that his memo for reconsideration did not have any additional information that addressed how he met those final qualifications. [66-16]. Ms. Kostmayer specifically laid out a format for Mr. Golden to use to detail how he met the qualifications. *Id.* She also provided examples and offered a consultation or recommendations to Nursing Board members who could assist Mr. Golden with the reconsideration process. *Id.* But Mr. Golden did not act on this advice. In fact, at the summary judgment hearing, Mr. Golden conceded that he did not provide any more information after he received the email from Ms. Kostmayer, specifically stating that the attempt seemed to "die on the vine." But "it is an employee's duty to supplement his or her employment file." *Johnson*, 351 F.3d at 625.

The VA contends that both Ms. Anderson and Ms. Goodnite satisfied the qualifications and Mr. Golden did not because he did not submit enough information in his proficiency and did not try to resubmit his reconsideration with the proper information. It is not within the Court's authority to second guess the VA's conclusions without more substantial evidence, because again, the Court is not a Human Resources Manager. *Owens*, 33 F.4th at 826. Mr. Golden must show that the reasons the VA proffered for not promoting him to a Nurse III are false and raise a genuine issue of fact as to pretext, and he has not done so. *Wallace*, 271 F.3d at 219-20; *Oliver*, 276 F.3d at 744; *Davis v. Farmers Ins. Exch.*, 372 F. App'x 517, 518 (5th Cir. 2010) ("[m]ere conclusory allegations are insufficient to defeat summary judgment").

## IV. HOSTILE WORK ENVIRONMENT

As to his final claim, Mr. Golden asserts that his supervisor, Louise Esteve, racially discriminated against him when, in a letter of expectation, she stated that she wanted Mr. Golden

21

to inspect his patients' homes, while his white coworkers were not asked to do the same.[12] [64], p. 22. Mr. Golden also asserts that Ms. Esteve sexually discriminated against him when he was asked to screen a patient with violent tendencies because another female coworker asked not to. [64], p. 20. The Court finds that Mr. Golden's assertions, while perhaps unpleasant, do not meet the high threshold of a hostile work environment claim.

"A hostile work environment exists 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116, 122 S. Ct. 2061, 2074, 153 L. Ed. 2d 106 (2002)). Harassment is sufficiently "severe or pervasive enough" to create a hostile work environment when it is "objectively hostile or abusive"—meaning "an environment that a reasonable person would find hostile or abusive"— and is subjectively perceived by the victim as abusive. *Id.*

To survive summary judgment on a hostile work environment claim based on race or sex discrimination, Mr. Golden must prove that he is (1) a member of a protected class who was (2) subject to unwelcome harassment that was (3) based on his status as a member of a protected class and was (4) sufficiently severe or pervasive to alter conditions of Mr. Golden's employment and create an abusive working environment, and that (5) the VA knew or should have known of the harassment in question and failed to take prompt remedial action. *Abbt v. City of Houston*, 28 F.4th

---

[12] Note that Mr. Golden has not specifically alleged a disparate treatment claim for any of the VA's alleged conduct.

601, 607 (5th Cir. 2022); *West v. City of Houston*, 960 F.3d 736, 741 (5th Cir. 2020) (per curiam) (citation omitted).

The hostility of a given work environment is determined based on the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Abbt*, 28 F.4th at 607. "[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Saketkoo v. Administrators of Tulane Educ. Fund*, 31 F.4th 990, 1003 (5th Cir. 2022).

It is undisputed that Mr. Golden is a black man. But Mr. Golden claims that he endured unwelcome harassment based on his status as a black man when he was asked to inspect the homes of his patients. [63-49]; [64]. But the record does not show that Mr. Golden ever inspected the homes of his patients or how many times he was asked to do so, in comparison to his white co-workers. Mr. Golden also does not show how such an ask from his supervisor was sufficiently severe or pervasive to alter the conditions of Mr. Golden's employment and create an abusive working environment. Moreover, Mr. Golden never reported this alleged incident to the VA such that it knew or should have known of Ms. Esteve's alleged harassment against Mr. Golden. As a result, the VA was never given an opportunity to take any action on Mr. Golden's behalf. Without this, Mr. Golden cannot satisfy the second, third, fourth, or fifth element needed to prove a hostile work environment and therefore fails to raise a genuine issue of material fact at the summary judgment stage. *Likens v. Hartford Life & Accident Ins. Co.*, 688 F.3d 197, 202 (5th Cir. 2012) ("Although all justifiable inference[s] must be drawn in favor of the non-movant, the non-movant

still cannot defeat summary judgment with speculation, improbable inferences, or unsubstantiated assertions."); *West*, 960 F.3d at 741.

Additionally, Mr. Golden adds that the incident leading up to the request for him to inspect the homes of his patients made him very worried about his job security because his "ethics and character were questioned" when Ms. Esteve asked him about the caregiver of this patient and queried whether the caregiver was a member of his church and whether the caregiver paid tithes to his church. [64], p. 19. At the time of this alleged incident, Mr. Golden served as the pastor to a local church. *Id.* But Mr. Golden does not point out how this relates to harassment or how it was racially charged. Moreover, no reasonable fact finder would agree that this inquiry was because of his race or that it created a hostile work environment but rather was ensuring there were no conflicts of interest which prevented Mr. Golden from fully doing his job.

As to Mr. Golden's second claim for a hostile work environment, he alleges that he endured unwelcome harassment based on his sexual status as a man when he was asked to screen a patient with violent tendencies after a female coworker denied the screening. [64], p. 20. But the record is clear that Mr. Golden also denied the screening. [15-12]. Further, Mr. Golden does point to any support to show that he was asked to screen the patient after he declined to do so, nor does he show that he reported this incident to the VA, such that they had the knowledge to take any action on his behalf. Yet again, Mr. Golden has not satisfied the second, third, fourth, and fifth element to succeed on a hostile work environment claim as he provides little analysis and virtually no case law to support this theory. *Abbt*, 28 F.4th at 607.

The conduct Mr. Golden describes to support his claim, while potentially unpleasant, are isolated incidents that do not rise to the necessary level. *Saketkoo*, 31 F.4th at 1003. Moreover, Mr.

Golden is still employed with the VA as a Nurse. [66-1]. For all of the above reasons, Mr. Golden's hostile work environment claim cannot succeed.

## V. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that McDonough's Motion for Summary Judgment [66] is GRANTED.

IT IS FURTHER ORDERED AND ADJUDGED that Mr. Golden's Motion for Partial Summary Judgment [63] is DENIED.

SO ORDERED, this the 28th day of March, 2024.

                        **TAYLOR B. McNEEL**
                        **UNITED STATES DISTRICT JUDGE**